Nicholson, C. J.,
delivered the opinion of the Court.
This is an action brought in the Circuit Court of Shelby County by G. T. McKinney, executrix of A. E. McKinney, deceased, against John S. Clayton to recover for the rent of a plantation in Arkansas for the year 1866. Defendant put in a number of pleas, the most important one of which was a special plea which states that defendant and plaintiffs testator entered into an agreement in 1866, by which defendant was to have the use and occupation of the lands in the declaration mentioned, for the year 1866, at the rental value of §6.00 per acre, and that it was then understood and agreed, and the essence of the contract was, that all of said rent should be applied and appropriated by defendant in repairing the fences on said *74 lands, and in erecting and constructing a levee thereon to protect the same from overflow; and the defendant avers that he did apply all of said rents in repairing said fences and in constructing such leveee according to their agreement.
The plaintiff took issue on all the pleas, and on the trial the jury found a verdict for the plaintiff for $2,250.
The defendant thereupon moved for a new trial, among other grounds, because this action could not be maintained by the executrix of A. F. McKinney, but that being for rent not due when A. F. McKinney died, the action should have been brought by the heirs or devisees of A. F. McKinney, and not by his personal representative. "Whereupon the plaintiff’s attorney offered in court to procure a release of the rent from the widow of A. F. McKinney, claiming that she was the devisee of the land, but no will or release was produced, and no authority of the attorney to make the release other than his authority as attorney-at-law in the cause. Defendant’s counsel objected to the production or use of any will or power of attorney, release or other proof, after the cause had been tried. The court overruled the motion for a new trial, and defendant appealed in error.
The facts proven, as far as it is necessary to state them, are as follows:
A. F. McKinney, a son of plaintiff, proved that his father, by his will, gave everything to his mother, who is the plaintiff, and that witness had no interest in the suit. He stated that W. Z. Mitchell, as agent of his *75 father, rented the plantation to Clayton & Scanlan for 1866 — they were to pay for the cleared land, about 375 acres, $6.00 per acre. This rent, or so much of it as might be required, Clayton & Scanlan were at liberty to pay in building, during the year 1866, a good and serviceable levee, said levee to be completed and in good condition during the year 1866. They were to be allowed one dollar per hundred for all rails split and laid around the cleared land. They were to be allowed the use of the mules, to be returned at the end of the year. In February/ 1867, they were at work on the levee, but their work was washed away by an overflow, and it was never completed.
The contract was made in February, 1866, and witness’ father died in April, 1866.
W. Z. Mitchell, a son-in-law of plaintiff, proved that as agent of A. F. McKinney, he rented the place to Clayton & Scanlan for 1866, at $6.00 per acre for cleared land — supposed to be 375 acres — and that Clayton had the privilege in the contract of paying said rent in a good levee, to be put on the McKinney plantation, which was to be done within the year 1866, that the lease did not extend beyond the year 1866, and there was no term in the contract that the lease should run into 1867, or until Clayton & Scanlan should gather their crop, nor did it provide for building the levee in 1867 — the levee work was to be done in 1866, within the time and term of the lease and not in 1867, that it was at Clayton’s option to pay the rent in money, or with levee work as he pleased in 1866. “
*76 N. E. Scanlan, for defendant, proved that there was a verbal contract by which Clayton rented the plantation; the contract was made about 1st of April, 1866; there was about 250 acres rented as far as he could judge; the land was rented until the crop planted that year was gathered and removed; the rent was at $6.00 per acre. It. was agreed that Clayton should repair the fences, and should be allowed $1.00 per hun-derd for rails used or made; and that Clayton might build a levee across a large slough, and the amount expended by Clayton in building the levee was to come out of the rent which he would owe for the land. That Clayton put up a levee during the time he rented the place, but it was not quite complete when it was washed away in 1867.
In view of this evidence the court charged the jury that “to make out the defence (of payment) in this case, it is sufficient to say, that if you find the contract to be that the rent might be paid in working on a levee during the term of the lease, so much as was thus so built, according to the contract, within the time stated in the contract, you will regard as a payment of the rent, and will credit this on the rent.
But if you find that the contract was that the rent was so much money which might be discharged in building a levee during the year 1866, then, before the defendant would be entitled to his defence, he must show that he did complete the levee according to the contract and within the time specified in the contract, and if he did he would be entitled to the credit. *77 If lie did not so build be would not be allowed the credit.
In a word, when you have determined what the contract was, the question then is, did the defendant comply with the contract in regard to the levee.”
It is obvious that these instructions were given in view of the conflict in the testimony as to what the contract was. The two witnesses for plaintiff testified that the land was rented for money, but that. the defendant had the privilege of paying it by building and completing a levee within the year 1866, the amount to be allowed for the levee being determinable by measurement.
The import of the charge is, that if the jury give credit to this testimony, and find such to have been the contract, then, if the levee was not built and completed within the year 1866, their verdict would be for the money rent.
On the other hand the witness for defendant testi-tified that the land was rented at $6.00 per acre, to be paid in levee work during the term of the lease, which was not to expire until the gathering and removal of the crop planted in 1866, although that might not be accomplished until in 1867.
If the jury should believe this to be the true contract, then the court instructed them that defendant would be entitled to credit for the amount of work done on the levee in 1867, if the work was done before the crop was gathered and removed.
It is insisted for defendant that the court erred in the distinction made between the two phases of the *78 contract, and that in either view the defendant would be .entitled to a credit for the value of his levee work, it is argued that the contract, as proven by plaintiff's witnesses, was not a contract by Clayton to construct a specified levee by the job entire, at a stipulated price for the whole, to be delivered when completed. In support of this position the cause of Wilson v. Knott, 3 Hum., 474, is relied on. In that case Knott undertook to build a house for Wilson. The house was to be placed on Wilson’s land; the materials were to be furnished by him; the dimensions were undetermined; the plan under his control, and nothing was specified with respect to payment but the rate of compensation according to admeasurement, and the mode, that is to say, cash notes. The court in that case say: “ It is not like a case where a contractor is to furnish materials, and do the work, and control the whole operation, and when finished and delivered to be paid for.” Therefore they hold that Knott was entitled to compensation for the value of his work, though the house was burnt down before its completion. But according to the testimony of the plaintiff in the case’ before us, there was a contract for a specific job —the construction and completion of a levee in a specified place — to be completed and delivered within a specified time, and at a specified price; all which things being done, defendant was entitled to a credit on his indebtednes for the rent. It is manifest that the case of Wilson v. Knott fails to support the position contended for. On the contrary, that case distinctly recognizes the distinction taken by the court *79 below, and supports its correctness. It is to be observed that the testimony of the plaintiff’s witnesses is-positive that the defendant, by the contract, was at liberty to pay the money rent by building a levee, on condition that it was built and completed within the year 1866. According to this evidence, time was an essential element in the contract. The privilege of paying in levee work was made to depend on its being completed by a specified time. The price was fixed, as it was merely a matter of measurement and calculation. We know of no principle upon which we can hold that parties shall not be bound by the terms of their own contracts. The question of fact, as to the contract really made, was left to the jury. They gave credit to plaintiff’s witnesses rather than defendant’s, and having determined that defendant failed to avail himself of the privilege of paying in levee work during the time within which he had that privilege, they could do nothing else but render a verdict for the plaintiff.
But it is next insisted that the court below erred in overruling the motion for a new trial, upon the ground that the plaintiff had no right to sue for the rent in her representative character, but that the suit ought either to have been in her name, as devisee, or in the name of the heirs of A. F. McKinney. It appears that most of the rent sued for accrued after the death of A. F. McKinney, and if he had the fee in the land, the rents as a general rule would follow the reversion and belong to his heirs, if he died intestate, or to his devisee, if he died testate.
*80 No question as to the right of plaintiff to sue. as executrix seems to have been raised by the pleadings or proof until after the cause was submitted to the jury on its merits, and a verdict rendered. Proof had been made, without objection, that A. F. McKinney had made .a will appointing his widow his executrix, and making her his sole devisee. It is too late now to except to that testimony, and we are to assume that it was proven that plaintiff as sole devisee was entitled .to the rents. The case then stands in this attitude; plaintiff being sole devisee and therefore entitled to the rent, and being also executrix, voluntarily waives her right to the rent as devisee, and elects to treat it as assets of the estate, and to sue for it in her representative capacity.
No exception is taken to her right so to sue until after she has recovered a verdict. The defendant then raises the question, and by her counsel she proposes to make her waiver of her rights as sole devisee, matter of record. But there was no necessity for such action on her part. By her election to claim the rent as assets of the estate she had estopped herself from ever claiming it as sole devisee, and therefore, defendant had no interest that could be prejudiced. She could never sue him as devisee for the rent after having recovered it as executrix.
But if „ it were doubtful whether the proof, that plaintiff was sole devisee or whether there was any will, was competent to establish those facts, the result would be that A. F. McKinney died intestate. But there is nothing in the record showing that he was *81 the owner in fee of the land. If his estate was less than a fee, the rent would belong to his personal representative as assets. In the absence of any proof on the subject, the court below could not assume that the rent belonged to the heirs, rather than to the personal representative. In that view, as well as on the ground before stated, the motion for a new trial was properly overruled.
Upon the whole we find no error in the record for which the case can be reversed.